UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        *Plaintiff,*

*vs.*

        Case No. 18-CR-135 (NJ)

CALVIN D. GLAZUNOV,

        *Defendant.*

**GLAZUNOV'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO DISMISS BASED ON A VIOLATION OF HIS SECOND AMENDMENT RIGHT**

Glazunov is protected by the Second Amendment. He has "substantial connections with this country," and has demonstrated that he is in the country voluntarily and that he has accepted societal obligations. *United States v. Meza*, 798 F.3d 664, 672 (2015). The government failed to show that the prohibition imposed on him by 18 U.S.C. § 922(g)(5) is substantially related to an important government objective.[1] As such, the indictment in this case infringes upon his constitutional right to bear arms and must be dismissed.

**A. Glazunov is part of "the people" protected by the Second Amendment**

Glazunov immigration status does not exclude him from "the people" protected by the Second Amendment. The Seventh Circuit held that unauthorized status alone "cannot support a *per se* exclusion from 'the people' protected by the Bill of Rights." *Meza*,

---

[1] The government spends a great deal of time arguing that strict scrutiny does not apply in this case. ECF 35 at 44-45. But Glazunov explicitly provided that his Second Amendment challenge is addressed in "some form of strong showing, akin to intermediate scrutiny," not strict scrutiny. ECF 33 at 3.

1

798 F.3d at 672. Noncitizens may invoke the Constitutional protection of the Second Amendment if they establish "substantial connections with this country," and show that they are in the country voluntarily and have accepted societal obligations. *Id.* at 670-72.

The government argues that Glazunov is not part of "the people" because of statements he allegedly made on Facebook, because he allegedly participated in open carry activities, and because he received a citation for shooting a park bench. ECF 35 at 44. This is the same argument the government made in *Meza*. *Id.* at 671. There, it argued that the defendant should not be considered part of "the people" based on the "unsavory traits [of the defendant], including his multiple brushes with the law." *Id.* The Seventh Circuit rejected this argument, and this Court should too.

The Glazunov had some brushes with the law is irrelevant. *Id.* Citizens and noncitizens alike, who raise Constitutional claims, are likely to have a criminal record. *Id.* A test that considers prior convictions to determine who may invoke Constitutional protections, would not only be difficult to implement, but "it would also create the potential for a noncitizen to lose constitutional rights she previously possessed simply because she began to behave in a criminal or immoral way." *Id.* In rejected his approach, the Seventh Circuit reasoned that the "Second Amendment is not limited to such on-again, off-again protection." Instead, the Court held that "the only question is whether the alien has developed substantial connections as a resident in this country." *Id.* Glazunov demonstrated that he is in the country voluntarily and has accepted societal obligations. Thus, he is within the group that may invoke the protections of the Second Amendment.

**B. The government failed to show that the gun prohibition upon Glazunov is substantially related to an important government objective.**

While Congress may circumscribe Glazunov's right to bear arms, the restriction imposed on him by 18 U.S.C. § 922(g)(5) must be permissible. And here, the government failed to provide how the restriction is substantially related to an important government objective.

In *Meza*, the Court found that noncitizens like Meza lived "largely outside the formal system of registration, employment, and identification, and are harder to trace and more likely to assume a false identity." *Id.* at 673 (internal brackets omitted). It further found that this group has "a strong incentive to use false identification papers [, and] will be more difficult to keep tabs on than the general population." *Id.* For instance, in Wisconsin a person must demonstrate lawful residence in order to obtain a driver's license.[2] Individuals who enter the country unlawfully (and remain in that status) are ineligible and thus more likely to seek false identification documents. Accordingly, the Court held that "Congress's interest in prohibiting persons who are difficult to track and who have an interest in eluding law enforcement is strong enough to support the conclusion that 18 U.S.C. § 922(g)(5) [did] not impermissibly restrict Meza–Rodriguez's Second Amendment right to bear arms." *Id.* at 673.

Glazunov distinguished *Meza* from his case because he is within the group of people that have a "strong incentive" to use false identification or are difficult to track.

---

[2] *See Application for a Driver's License, available at* https://wisconsindot.gov/Pages/dmv/license-drvs/how-to-apply/get-lic.aspx

Indeed, his pending Asylum application requires him to keep the government apprised of his whereabouts and to periodically appear for appointments. The government issued Glazunov a social security number, work authorization, and a driver's license, so he has no need to live "outside the formal system of registration, employment, and identification," or incentive to use false identification.

The government failed to address Glazunov's argument or *Meza's* holding. Instead, it generally argued that *Meza* "found that Congress was well-within its rights to relate aliens," and that disarming "illegal immigrants is substantially related to an important government objective." ECF 35 at 48. But this was not the holding in *Meza*. The Court's holding there was narrow to a specific group of people, like Meza, "who are difficult to track and who have an interest in eluding law enforcement." *Id.* at 673. As noted above and in his motion, Glazunov is not a part of this group.

The prohibition imposed on Glazunov by 18 U.S.C. § 922(g)(5) impermissibly infringes on his Second Amendment right. As such, the indictment in this case must be dismissed.

Dated at Milwaukee, Wisconsin, this 2nd day of November, 2018.

Respectfully submitted,

*/s/    Gabriela A. Leija*
Gabriela A. Leija, WI Bar #1088023
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI   53202
Tel.: (414) 221-9900
E-mail: gabriela_leija@fd.org