UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff,*

              Case No. 18-CR-135 (PP)

*vs.*

CALVIN D. GLAZUNOV,

   *Defendant.*

## GLAZUNOV'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. Glazunov's Due Process Challenge**

The Report and Recommendation concluded that Glazunov's Due Process challenge, based on estoppel by entrapment, is a question reserved for the jury. While estoppel by entrapment may be an affirmative defense at trial, Glazunov objects to the Report's conclusion because the undisputed facts in this case provide a sufficient foundation for the Court to decide the pure legal issue raised. They also establish that Glazunov cannot be convicted of the charges in the indictment.

In cases where there are no material facts in dispute, "courts may entertain motions that require it to answer only pure questions of law. *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010). The rules of criminal procedure allow courts to dismiss an indictment without a trial. Fed. R. Crim. P. 12(b). And the Seventh Circuit has allowed the use of this procedure under appropriate circumstances. *See United States v. Ponto*, 454

*Federal Defender Services of Wisconsin, Inc.*

F.2d 657, 659 (7th Cir. 1971) (en banc) (upholding the granting of a pretrial motion to dismiss).

Here, the undisputed evidence establishes that Glazunov reasonably relied on the Department of Justice's approval to purchase the gun it now charges him with unlawfully possessing. Due Process bars convictions under these circumstances, so he moves to dismiss.

**A. Undisputed facts.[1]**

On January 26, 2018, Calvin Glazunov went to Blackhawk Shooting Sports to purchase a gun. (ECF No. 32-1 at 1-5; ECF No. 35 at 2, 41). There, Glazunov provided a sales associate, Douglass Grunewald, his driver's license and the gun he wished to purchase. (ECF No. 32-1 at 3-4). Glazunov and Grunewald completed the U.S. Department of Justice ATF Form 4473 requesting permission to lawfully transfer the gun to Glazunov. (*Id*. at 1-3). Glazunov's application was delayed for review by the Brady Operations branch under Application Field Report No. NTN 100HPJCN1. (*Id*. at 2, 6-11; ECF No. 35 at 3).

According to the decision notes of the ATF report created on January 26, 2018, Glazunov lawfully entered the U.S. on February 19, 2008, and "was legally admitted to the U.S. as a non-immigrant" until November 4, 2018. (ECF No. 32-1 at 8). But the notes also provide that if Glazunov remained in the U.S. beyond the November date "without I.C.E. permission, [Glazunov] may be in violation of immigration laws." (*Id*.). On

---

[1] The following facts are undisputed by the government. The exhibits consist of documents received in discovery and Glazunov provides cites to the government's pleading where it adopts the facts provided.

<s>*Federal Defender Services*
*of Wisconsin, Inc.*

January 29, the ATF denied the application on the grounds that Glazunov was a prohibited person under § 922(g)(5), or illegal/unlawful status. (*Id*. at 2; ECF No. 35 at 3, 41). Based on the ATF's denial, Blackhawk Shooting Sports did not sell the gun to Glazunov. (*Id.*; ECF No. 35 at 3).

On February 9, 2018, Glazunov submitted a second ATF 4473 Form to purchase a .22 caliber rifle—the gun he is now charged with possessing unlawfully—at Daane Ace Hardware. (ECF No. 32-1 at 12-15). This application was also initially delayed for review. (*Id*. at 14). But unlike his first application, on February 12, 2018, the ATF approved a lawful transfer of the gun from Daane Ace Hardware to Glazunov. (*Id*. at 2; ECF No. 35 at 3, 41). After Danne Ace Hardware received the approval, it lawfully sold the .22 caliber rifle to Glazunov. (*Id.*). Three months later, on May 15, 2018, an undercover ATF agent purchased the .22 caliber rifle from Glazunov during an undercover buy in front of the Sheboygan Police Department. (ECF No. 32-1 at 16-18; ECF No. 35 at 41).

On June 19, 2018, the United States Attorney's office filed an indictment charging Glazunov with unlawfully possessing the .22 caliber rifle between February 14, 2018 (two days after the ATF approved the transfer to Glazunov) and May 15, 2018 (the day the ATF took the gun back). (ECF No. 4). The government also charged Glazunov with possessing ammunition on or about May 31, 2018, which also occurred after the ATF's approval. *Id*.

The government did not oppose these facts in its pleadings, nor argue that additional evidence was necessary to dispute or decide the issue.

3

**B. The undisputed facts provide the Court with a purely legal issue and establish that the Due Process Clause bars a conviction under these circumstances.**

This isn't a case where a man procured a gun in a back alley from a stranger. Here, Glazunov legally purchased a .22 caliber rifle after he acquired the ATF's consent to do so. To now charge and convict Glazunov of possessing the gun and ammunition that the government gave him permission to purchase would be to "sanction an indefensible sort of entrapment." *Raley*, 360 U.S. at 425-246.

The circumstances in this case are what led the Supreme Court to apply the entrapment by estoppel doctrine in the first instance, in *Raley v. Ohio*, 360 U.S. 423 (1959) and *Cox v. Louisiana*. 379 U.S. 559, 571 (1965). These cases establish that the government cannot give someone permission to act, then punish him when he acted in reasonable reliance of that authorization. *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994). The "Due Process Clause does not permit convictions to be obtained under such circumstances." *Cox*, 379 U.S. at 571.

The doctrine applies even when the government mistakenly granted permission to act and did not intend to deceive. *Raley*, 360 U.S. at 438-39 (the defense applies even though the relevant government agency acted without "any intent to deceive" the citizens). And the authorization does not have to be unequivocally or expressly made, so long as the the official's conduct gives "the same impression." *Id.* at 437 ("the agent of the State in a position to give such assurances, apprised three of the appellants that the privilege in fact existed, and *by his behavior toward the fourth obviously gave the same impression*") (emphasis added).

4

*Federal Defender Services of Wisconsin, Inc.*

Here, the circumstances lead to a reasonable inference that the government may have mistakenly approved the lawful transfer of a gun to Glazunov. But this does not change the fact that Glazunov reasonably relied on that authorization to lawfully purchase and possess the gun. Glazunov's initial request to lawfully purchase a gun was denied, but he was not told why. So when the government granted him permission to purchase a gun some weeks later, he reasonably relied on the authorization to conclude that he was lawfully entitled to possess it. His reliance on the ATF's approval was reasonable under the circumstances, and the government failed to argue otherwise.

**II. Glazunov's Second Amendment Challenge**

As the Magistrate Judge recognizes, *United States v. Meza-Rodriguez* sets forth a two-step process for determining whether an undocumented noncitizen can avail himself of the protections of the Second Amendment. 798 F.3d 664 (7th Cir. 20015). Specifically, the Court must first determine whether the defendant has developed substantial connections within his community. If so, then he is "part of the people" that may invoke the protection of the Second Amendment.

Second, the Court must determine whether § 922(g) unconstitutionally restricts the defendant's Second Amendment rights. This analysis requires "some form of strong showing, akin to intermediate scrutiny," that a substantial relationship exists between § 922(g)(5) and its objective of keeping guns from presumptively risky people and to suppress armed violence. In *Meza-Rodriguez*, the Court concluded that keeping guns from undocumented noncitizens who are difficult to track and who have an interest in eluding

5

law enforcement due to lack of formal registration, employment, and identification, is substantially related to Congress' objective.

Glazunov agrees with the Magistrate Judge's analysis of *Meza-Rodriguez*. And he argues that unlike *Meza-Rodriguez*, Glazunov does not fall within the group likely to elude law enforcement because he lives outside the system of registration. So the government cannot show that there is a substantial relationship between § 922(g)(5) and Congress' objective of keeping guns out of the hands of presumptively risky individuals in this case.

In support of his argument, Glazunov provided the Court with a series of exhibits to show that Glazunov entered the country lawfully; maintained lawful status in the country for many years; was issued a social security number; was eligible for a Wisconsin driver's license; was authorized to work; maintained constant communication with the United States Citizenship and Immigration Services; and had substantial ties to his community. However, he agrees with the Magistrate Judge that the parties had not stipulated to the significance of the documents, particularly those related to immigration matters.

The evidence included in these documents and evidence related to Glazunov's ties to his community will not be relevant at trial, and thus likely inadmissible. And as it is the policy of this branch of the Court to require that the parties include all relevant evidence and legal argument to a magistrate judge prior to the issuance of a recommendation, counsel for Glazunov should have requested an evidentiary hearing. For these reasons, Glazunov respectfully objects to the Magistrate Judge's recommendation that the Court reserve ruling on this issue, and asks that the Court refer
6

*Federal Defender Services*
*of Wisconsin, Inc.*

the matter back to the Magistrate Judge to hold a hearing and for the issuance of an updated Report and Recommendation in light of the evidence the Glazunov intends to present.

Dated at Milwaukee, Wisconsin this 20th day of November, 2018.

Respectfully submitted,

/s/    *Gabriela A. Leija*
Gabriela A. Leija, WI Bar #1088023
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI   53202
Tel.: (414) 221-9900
E-mail: gabriela_leija@fd.org

*Counsel for Defendant,* Calvin D. Glazunov